UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SANTO GUERRERA | * | |
|     Complainant | * | CIVIL ACTION |
| | * | |
| | * | NO.: 2:24- CV-1354 |
| VERSUS | * | |
| | * | DIVISION "T" |
| UNITED FINANCIAL | * | |
| CASUALTY COMPANY | * | MAG.   3 EJD |
|     Defendants | * | |
| | * | |

*************************************************************************

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ISSUE BEFORE THE COURT:**

This motion requests this court to determine whether the insurance policy issued by Certain Underwriters of Lloyds, London subscribing to Policy No. HISOG61P, (Lloyds) to plaintiff Santo Guerrera provided uninsured/underinsured motorist coverage to the plaintiff at the time of the sued upon accident as required by La.R.S. 22:1295.  The interpretation of an insurance policy is a question of law. *Diversified Group, Inc. v. Van Tassel*, 806 F.2d 1275, 1277 (5th Cir.1987); *Cal-Dive Int'l, Inc. v. Seabright Ins. Co.*, 627 F.3d 110, 113 (5th Cir. 2010). Thus, this court has the authority to construe the provisions of the policy in order to resolve questions of coverage. *Stoute v. Long,* 98–683 (La.App. 3 Cir. 12/9/98), 722 So.2d 102. *Thibodeaux v. Living Waters Cmty. Church*, 2008-1064 (La. App. 3 Cir. 3/4/09), 5 So. 3d 1007, 1009, writ denied, 2009-0749 (La. 5/22/09), 9 So. 3d 145 Moreover, summary judgment is always appropriate "where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

**FACTS:**

On October 12, 2022 Lloyds issued an Oil and Gas Consultant Primary Liability

Insurance (Policy No. HISOG61P) to Smart Well Solutions, LLC covering the policy period October 12, 2022 to October 12, 2023.[1] The accident occurred within the policy period on February 11, 2023.

The named insured in the policy, Smart Well Solutions, LLC, is the plaintiff's limited liability company under which he provides deepwater well construction consultant services. The LLC is wholly owned by the plaintiff Santo Guerrera who is also the sole member of the LLC. Further, Santo Guerrera is the person who procured the policy of insurance, signed the application and all related documents.[2]

On page 18 of the policy, it defines who is an insured which includes the following

> c. A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

Starting on page 10, Section III of the policy sets forth the policy's exclusions. On page 12, under a section entitled "Vehicles" the policy excluded liability coverage arising out of the ownership, maintenance, operation or use, including loading and unloading, by, on behalf of, or at the direction of the "insured", of any "autos," watercraft, aircraft or spacecraft of any kind owned or operated by or rented or loaned to you. However, at the bottom of page 12, the policy specifically states that the preceding vehicle exclusion does not apply to:

> ...
>
> **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the "insured";
>
> **(4)** "property damage" and/or "bodily injury" arising from the operation or use of a non-owned "auto";

---

[1] See Exhibit 1 Policy No. HISOG61P

[2] See Exhibit 2 Affidavit of Santo Guerrera.

**(i)** hired by; or

**(ii)** loaned to; the "insured", provided always that said operation or use of the "auto" is:

**(a)** related solely and exclusively to the conduct of the "insured's" business and only if carried out by an "insured"; and

**(b)** in respect of a hired "auto", the hire is pursuant to an express commercial contract of hire entered into by the "insured" with a "third party" "auto" provider who is unaffiliated, unrelated and does not share any common control or common ownership with the "insured."

Further, as part of the policy application process, Lloyds provided a form to the plaintiff that states in pertinent part the following:

**<u>APPLICABLE ONLY IN LOUISIANA:</u>**

I ACKNOWLEDGE THAT UM COVERAGE HAS BEEN EXPLAINED TO ME, AND I HAVE BEEN OFFERED THE OPTION OF SELECTING UM LIMITS EQUAL TO MY LIABILITY LIMITS, UM LIMITS LOWER THAT MY LIABILITY LIMITS, OR TO REJECT UM COVERAGE ENTIRELY.

1.  I SELECT UM LIMITS INDICATED IN THIS APPLICATION.   [ ]   OR
                                                     **(INITIALS)**

2.  I REJECT UM COVERAGE IN ITS ENTIRETY.   [ SG ]
                                           **(INITIALS)**

The plaintiff's initials appear in the box purportedly rejecting UM coverage offered under the policy. The form is then electronically signed by the plaintiff and his insurance agent. and dated October 11, 2022.[3]

**APPLICABLE LAW:**

La. R.S. 22:1295, it states in pertinent part:

---

[3]   See Exhibit 3 - Signed UM Form

-3-

>(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage**,** selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section.
>
>(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.
>
>...
>
>**(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to *any liability insurance covering any accident* which occurs in this state and involves a resident of this state.**

Under Louisiana's UM statute, La.R.S. § 22:1295, **any** automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM motorist coverage equal to the liability provided for bodily injury, unless UM coverage has been validly rejected or lower UM limits have been selected. *Jones v. Henry*, 542 So.2d 507, 508 (La.1989). The requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987).

Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as a liability insured under a policy of auto insurance is not entitled to UM coverage under the policy. See

*Taylor v. Rowell*, 98–2865, at 6 (La.5/18/99), 736 So.2d 812. In other words, a plaintiff must be an "insured" under an auto liability coverage to be entitled to statutory UM coverage.

In *Howell v. Balboa Ins. Co.*, 564 So.2d 298 (La.1990), the Louisiana Supreme Court held that UM coverage attaches to the person of the insured, not the vehicle, and that provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA–R.S. 22:1295. In other words, any person who enjoys the status of the insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage ***enjoys coverage protection simply be reason of having sustained injuries by an uninsured/underinsured motorist.*** Id. at 301–02 (emphasis added). As such, any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for purposes of auto liability insurance coverage. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So. 2d 191, 195–96

When the existence of UM coverage under a policy of automobile insurance is at issue, *Magnon v. Collins, Succession of Fannaly v. Lafayette Insurance Company, Filipski v. Imperial Fire & Casualty Insurance Company, and Cadwallader v. Allstate Insurance Company* require a two-step analysis: (1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated. See also *Bernard v. Ellis,* 11–2377 (La.7/2/12), 111 So.3d 995, 1000 (recognizing that an automobile insurance policy must first be examined for contractual UM coverage, and if contractual coverage is absent, "if a plaintiff is insured under the auto liability coverage, he is entitled to UM coverage" (citing *Magnon v. Collins and Filipski v. Imperial Fire & Casualty Insurance Company*). *Green ex rel. Peterson v. Johnson*, 2014-0292 (La. 10/15/14), 149 So. 3d 766, 773–74

**DISCUSSION:**

The above legal authority shows that there are three questions that must be answered to determine whether an insured is entitled to UM coverage under a policy. First, does the policy provide any auto liability coverage. Second, is UM coverage contractually provided under the express provisions of the policy. If contractual UM coverage is absent, the third question is whether the plaintiff is statutorily entitled to UM coverage as an insured under the auto liability coverage found in the policy.

**THE LLOYDS POLICY EXTENDS AUTO LIABILITY COVERAGE:**

The first question is whether the policy at issue extends any auto liability coverage. Turning to the bottom of page 12, the policy specifically extends auto liability coverage for property damage and bodily injury arising out of the use and operation of a non-owned auto under the following circumstances:

> **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the "insured";
>
> **(4)** "property damage" and/or "bodily injury" arising from the operation or use of a non-owned "auto";
>
> **(i)** hired by; or
>
> **(ii)** loaned to; the "insured", provided always that said operation or use of the "auto" is:
>
> **(a)** related solely and exclusively to the conduct of the "insured's" business and only if carried out by an "insured"; and
>
> **(b)** in respect of a hired "auto", the hire is pursuant to an express commercial contract of hire entered into by the "insured" with a "third party" "auto" provider who is unaffiliated, unrelated and does not share any common control or common ownership with the "insured".

Thus, it is clear from the above language that the policy provided auto liability coverage

to the insured for property damage and bodily injury arising from the operation or use of a "non-owned auto" if loaned or hired by the insured. Effectively, this provides auto liability coverage for the insured if he uses a non-owned loaner or rental car while conducting business.

Lloyds may argue that the policy is a commercial general liability policy and does not provide general auto liability coverage. While this statement is true, it is also immaterial. Subsection (1)(a)(iii) of R.S. 22:1295 makes it abundantly clear that the requirement to provide UM coverage applies to any liability insurance covering any auto accident.

> **(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to *any liability insurance covering any accident* which occurs in this state and involves a resident of this state.**

Therefore, because the policy provided some measure of auto liability coverage, albeit limited in circumstances, this type of coverage was sufficient to trigger R.S. 22:1295's requirement that the policy also provide UM coverage.

Further, because the requirement to provide UM coverage applies to any auto liability policy covering any accident, it is immaterial whether the insured was engaged in the covered activity at the time of the accident. The first question is whether the policy afforded auto liability coverage under any circumstances. If so, then it was also required to provide UM coverage unless validly rejected by the insured. Thus, because the Lloyd's policy provided auto liability coverage, even for limited purposes, the policy was statutorily required to provide UM coverage unless it was validly waived by the insured.

**CONTRACTUAL UM COVERAGE.**

The second question is whether the policy provided contractual UM coverage. Exhibit 3 clearly shows that Lloyds understood its duty to provide and actually offered UM coverage to the plaintiff under the policy. However, likely because the plaintiff initialed the box rejecting UM coverage, there is no UM policy provisions or coverage language in the actual policy itself. Consequently, the answer to whether there is contractual UM coverage in the policy is no.

**PLAINTIFF IS AN INSURED UNDER THE POLICY:**

Since there is no contractual UM coverage contained in the policy, the final question is whether the plaintiff qualified as a liability "insured" under the policy entitling him to statutory UM coverage under La.R.S. 22:1295. The named insured, Smart Well Solutions, LLC., is a limited liability company solely owned and operated by the plaintiff to conduct his deepwater drilling consulting business. Mr. Guerrera is the sole member of the LLC and was the person who procured, paid for and signed the application for the insurance policy and all other relevant documents at issue.

Further, the relevant definition of an "insured" under the policy states that if you are designated in the declarations as a limited liability company, you are an "insured." Your members are also "insureds," but only with respect to the conduct of your business.

Thus, there is no question that when the definition of insured is coupled with the auto coverage afforded above, Santo Guerrera, an undisputed member of the LLC, is afforded auto liability coverage under the policy if he rented a vehicle in furtherance of his business. In other words, under these circumstances he is an auto liability insured under the policy. Because there was a set of circumstances under which the plaintiff would be an insured under this policy that afforded auto liability insurance, the policy was required to provide him uninsured motorist coverage.

**LLOYDS ACTUALLY OFFERED UM COVERAGE BY WAY OF ITS PURPORTED WAIVER FORM.**

Nothing demonstrates more clearly that Lloyds was fully aware that it was required to provide UM coverage under the policy, and in fact did offer UM coverage to the plaintiff, than a review of Exhibit 3, the purported UM waiver form it had the plaintiff execute. This form specifically states:

> I ACKNOWLEDGE THAT UM COVERAGE HAS BEEN EXPLAINED TO ME, AND I HAVE BEEN OFFERED THE OPTION OF SELECTING UM LIMITS EQUAL TO MY LIABILITY LIMITS, UM LIMITS LOWER THAT MY LIABILITY LIMITS, OR TO REJECT UM COVERAGE ENTIRELY

The form then provided two boxes allowing the plaintiff to either select UM limits indicated in the application or reject UM coverage in its entirety.

Clearly, the form indicates that Lloyds offered the plaintiff UM coverage under the policy. Thus, there can be no dispute that not only did R.S. 22:1295 require this policy to provide UM coverage, but Lloyds clearly explained that UM coverage was available under the policy to the plaintiff and intended to provide UM coverage or have the insured reject UM coverage. However, the waiver form provided by Lloyds, which contains the electronic initials and signature of the plaintiff, is invalid for multiple reasons.

**THE UM REJECTION FORM IS INVALID:**

La. R.S. 22:1295 makes clear, a rejection of UM coverage "shall be made only on a form prescribed by the commissioner of insurance." The Louisiana Supreme Court discussed this mandate and the requirements that must be adhered to in order to effectuate a valid UM waiver in *Berkley Assurance Co. v. Willis*, 2021-01554 (La. 12/9/22), 355 So. 3d 591, 595–96, reh'g denied, 2021-01554 (La. 1/27/23), 362 So. 3d 423

> Waiver of UM coverage "shall be made on a form prescribed by the commissioner of insurance" and only a "properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage." La. R.S. 22:1295(1)(a)(ii) (emphasis added). "In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require." Duncan, 06-0363, pp. 12-13, 950 So.2d at 552. "Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid." Id., 06-0363, p. 14, 950 So.2d at 553.
>
> The current UM form, prescribed under Bulletin 08-02, mandates the insurer's name, group name, or logo is necessary for a valid waiver of coverage. In relevant part, the form states: "If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete the form and return it to your insurance agent or insurance

company." Completion requires filling out the UM form in its entirety except where otherwise indicated on the face of the form. See La. C.C. art. 2047 ("words of a contract must be given their generally prevailing meaning"). Unlike the prior iteration of the UM form at issue in *Gingles,* a designated box in the current version of the form expressly provides for the entry of the insurer's name. See *Gingle*s, 08-2995, p. 1, 4 So.3d at 799. Thus, Bulletin 08-02 made specific changes to the UM form by mandating the inclusion of the two boxes on the lower right corner of the form. As correctly noted by the court of appeal, while the descriptive "Optional" appears in the box provided for "Information for Policy Identification Purposes Only," no such language appears in the box provided for the insurer's name. *Willis*, 20-0354, pp. 14-15, 328 So.3d at 576. What is not optional is mandatory. Berkley had the authority, opportunity, and responsibility to assure the UM form was properly completed. *Gray v. American Nat. Property & Cas. Co.*, 07-1670, pp. 14-15 (La. 2/26/08), 977 So.2d 839, 849-50; see also Stone v. Allstate Property and Casualty Ins. Co., 18-0547 (La.App. 3 Cir. 3/7/19), 269 So.3d 961 (UM form valid where insured initially rejected coverage with a check mark but supplemented with initials upon request of insurer). It was not. A requirement mandated on the face of the UM form itself can never be hyper-technical nor its absence considered a minor deviation.

      The tasks mandated by the current UM form, prescribed under Bulletin 08-02, are as follows: 1) initialing the selection or rejection of coverage chosen; 2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; 3) printing the name of the named insured or legal representative; 4) signing the name of the named insured or legal representative; 5) filling in the insurer's name, the group name, or the insurer's logo; and 6) filling in the date. Failure to properly complete the UM form results in an invalid rejection or selection of lower limits of UM coverage. *Duncan*, 06-0363, pp. 14-15, 950 So.2d at 553. Consequently, by operation of statute, UM coverage is equal to the liability limits of the policy. Id., 06-0363, p. 16, 950 So.2d at 554; La. R.S. 22:1295(1)(a)(i).

*Berkley Assurance Co. v. Willis,* 2021-01554 (La. 12/9/22), 355 So. 3d 591, 595–96, reh'g denied, 2021-01554 (La. 1/27/23), 362 So. 3d 423

When the mandated requirements are reviewed relative to the attached Louisiana Department of Insurance bulletin 08-02, the form Lloyds used is deficient in multiple ways.[4] First, R.S. 22:1295 (1)(a)(ii) requires that the rejection of UM coverage "shall be made only on a form prescribed by the commissioner of insurance." As this court can see, the form used by Lloyds is not the same form as prescribed in bulletin 08-02. Further printing the name of the

---

[4] See Exhibit 4 - Bulletin 08-02

named insured or legal representative is also required. The form does not have the insured, either Smart Well Solutions, LLC or Santo Guererra, printed on the purported UM rejection form. Additionally, nowhere on the form is the insurer's name, the group name, or the insurer's logo present. Further, there is nowhere on the form that allows the insured to actually select an amount of UM coverage less than the applicable liability limits.

As noted above in *Berkley*, a requirement mandated on the face of the UM form itself can never be hyper-technical nor its absence considered a minor deviation. What is not optional is mandatory. Lloyds had the authority, opportunity, and responsibility to ensure that the UM rejection form that it presented to the plaintiff was in proper form and properly completed. It failed to do so.

Failure to properly complete the UM form results in an invalid rejection or selection of lower limits of UM coverage. Consequently, by operation of law, the policy provides UM coverage equal to the liability limits of the policy.

**UNINSURED MOTORIST COVERAGE FOLLOWS THE PERSON:**

To escape this conclusion, it is anticipated that Lloyds will argue that the plaintiff was not an insured under the policy because at the time of the incident, it will claim, he was not "conducting the business" of the LLC. This argument is invalid on multiple levels. First, it misconstrues the applicability of UM coverage.

As noted above, the Louisiana Supreme Court has held that UM coverage attaches to the person of the insured, not the vehicle. Thus, it does not matter if Mr. Guerrera was operating a rental car that would have been covered under the policy at the time of the accident. The coverage follows him, not the covered auto.

The only question is whether Mr. Guerrera enjoyed the status of an insured under a Louisiana motor vehicle liability policy. If so, then he was entitled to uninsured/underinsured motorist coverage under the policy. With such coverage in place, he enjoyed coverage

protection simply by reason of having sustained injuries by an uninsured/underinsured motorist. Id. In other words, it does not matter what the insured was doing at the time of the accident. If he was injured by an uninsured motorist, he was covered.

In this case, there is no question that under certain circumstances Mr. Guerrera was an auto liability insured under the Lloyds policy which provided auto liability coverage, i.e. while operating a rental car while conducting the business of the LLC. It is the existence of this auto liability policy providing coverage to Mr. Guerrera that entitled Mr. Guerrera to statutory UM coverage under R.S. 22:1295. Thus, since he was entitled to UM coverage by virtue of the auto liability coverage, the UM coverage followed him and provided coverage simply by reason of having sustained injuries by an uninsured/underinsured motorist.

**MR. GUERRERA IS ALWAYS CONDUCTING THE BUSINESS OF THE LLC:**

The second reason why Lloyds argument that Mr. Guerrera was not conducting the business of the LLC at the time of accident fails is because Mr. Guerrera is always conducting the business of the LLC.

In the attached affidavit of Mr. Guerrera, he testifies that he provides deepwater well construction consultant services and Smart Well Solutions, LLC is his company through which he provides these services. He is the only employee and member of Smart Well Solutions, LLC. He further testified that since 2005, 20-25% of calls for his services to clients were outside of normal business hours. Further, he is the only person who received these calls and provided consulting services on behalf of Smart Well Solutions, LLC. Additionally, he was specifically under contract with BOE Exploration & Production LLC at the time of the accident.

The nature of his business requires that he be available twenty four hours a day, seven days a week for consultation regarding any issue for which he has been retained. Effectively, he is on-call at all times, including at the time of the accident. It is no different than when any other employee is on call for his job. When someone is on-call for their business, they are conducting

the business of the LLC.

Further, while on call for Smart Well Solutions, LLC, there can be no dispute that Mr. Guerrera was an insured under the commercial general liability coverage under the policy. Since he was clearly an insured under the policy in general, he was certainly an insured under the portion of the policy that provided auto liability coverage. Consequently, since Mr. Guerrera is always on call for the business, he is always conducting the business of the LLC thereby making him an insured under the entirety of the policy at all times.

**THE POLICY WAS PURCHASED FOR THE SOLE PURPOSE OF PROVIDING COVERAGE FOR MR. GUERRERA.**

Finally, the argument that Mr. Guerrera is not an insured under the policy that he purchased to cover his own liability is specious. He is not a mid-level employee trying to take advantage of his employer's coverage. He is the sole owner and operator of the named insured Smart Well Solutions, LLC. He IS the person who purchased the policy to cover his consulting activities and his business. To suggest that a person who purchases a policy for his own benefit is not an insured under that same policy is not supported in the law or under this contract of insurance.

This argument is simply Lloyds attempt to escape liability under the policy because it failed to have Mr. Guerrera execute a valid UM rejection. Had Lloyds had him execute the proper form then there would be no UM coverage under this policy. It failed to do so. Thus, UM coverage will be statutorily read into the policy.

A rhetorical question to be considered is what would Lloyds be arguing now if Mr. Guerrera had initialed the box on Exhibit 3 accepting UM coverage? Would they be claiming that he is not an insured under the policy even though he specifically purchased UM coverage under the policy? Such an argument would be untenable.

However, because the rejection form is invalid, the result is the same as if he had selected

UM coverage. Clearly, it was Lloyds obligation to provide UM coverage to its insured or have him execute a proper waiver. It failed to have a proper waived signed, thus there is UM coverage. It cannot escape this result by attempting to argue that Mr. Guerrera is somehow not an insured under the policy that he purchased.

**CONCLUSION:**

For the foregoing reasons, this court should find that the Lloyds policy does in fact provide UM coverage to the insured Santo Guererra for the accident made the subject of this litigation.

Respectfully submitted,



_____
**THOMAS CORRINGTON, BAR NO. 21536**
3431 Prytania St.
New Orleans, Louisiana 70115
Telephone: (504) 895-3431
Facsimile: (504) 895- 1312
Thomas@corringtonlaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that on November 12, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Dianna Duffy Willem
HEBBLER & GIORDANO, L.L.C.
3501 N. Causeway Boulevard, Suite 400
Metairie, LA 70002
Telephone: (504)833-8007
Facsimile (504)833-2866
willem@hebblergiordano.com

Caroline Murley
1555 Poydras Street, Suite 2000
New Orleans LA 70112
504-525-9888
cmurley@twpdlaw.com


R. Patrick Ray
Frilot LLC
1100 Poydras Street, Suite 3800
New Orleans, LA 70163
(504) 599-8172
pray@frilot.com

              THOMAS CORRINGTON
              Counsel For Plaintiff