UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SANTO GUERRERA | CIVIL ACTION |
| VERSUS | NO: 2:24-cv-1354 |
| UNITED FINANCIAL CASUALTY COMPANY, et al. | SECTION: T (1) |

### ORDER AND REASONS

Before the Court are various Motions to Dismiss and Motions for Summary Judgment regarding two legal issues. For the following reasons, defendants Rasier, LLC ("Rasier") and Uber Technologies, Inc.'s ("Uber"), Motion to Dismiss, R. Doc. 13, and defendant United Financial Casualty Company's ("UFCC") Motion for Summary Judgment, R. Doc. 15, are **GRANTED.** Plaintiff's, Santo Guerrera, Motion for Summary Judgment, R. Doc. 12, is **DENIED.** Plaintiff's Motion to Certify to the Louisiana Supreme Court, R. Doc. 53, is **DENIED AS MOOT.** Secondly, Defendant Certain Underwriters of Lloyd's, London ("Lloyd's") Cross-Motion for Summary Judgment, R. Doc. 62, is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment against Lloyd's, R. Doc. 44, is accordingly **DENIED.**

### BACKGROUND

This lawsuit arises from a car accident on February 11, 2023 ("the Accident"). Defendant Rasier is a wholly-owned subsidiary of Uber, a "transportation network company" ("TNC") that facilitates rideshare services between drivers and passengers via a popular mobile-phone

1

application ("the Uber App").[1] *See* R. Doc. 1-1. UFCC is the alleged uninsured/underinsured motorist ("UM") carrier for Rasier. R. Doc. 13-1 at p. 2. Plaintiff was a passenger in a "prearranged ride" with driver, Louis Faciane, ("the Uber driver") via the Uber App. *Id.*[2]

The accident occurred on a Saturday during Mardi Gras season. R. Doc. 60-3 at p. 3. Plaintiff first left his house in his own vehicle around midday and drove to his friend William McKay's residence. *Id*. Plaintiff is the sole owner, operator, and member of Smart Well Solutions, LLC ("SWS"), a limited liability company for Plaintiff's deepwater well construction consulting services. R. Doc. 69-1 at p. 1. McKay however does not have a business relationship with SWS. R. Doc. 60-3 at p. 5. Plaintiff left his car at McKay's house and called for a ride via the Uber App from McKay's residence to a local restaurant for lunch. *Id.* at p. 3. The two ate lunch at the restaurant, and then watched a Mardi Gras parade. *Id.* at pp. 3-4. After the parade, Plaintiff called another ride on the Uber App to transport him and McKay back to McKay's residence. *Id.* On the way back to McKay's house, the Accident allegedly occurred at the Claiborne and Jackson Avenue intersection in New Orleans. R. Doc. 12 at p. 2; R. Doc. 60-3 at p. 8. Plaintiff alleges another

---

[1] La. R.S. 42.201.4(6) defines "'[t]ransportation network company' [as] a person, whether natural or juridical, that uses a digital network to connect transportation network company riders to transportation network company drivers who provide prearranged rides, or a person, whether natural or juridical, that provides a technology platform to a transportation network company rider that enables the transportation network company rider to schedule a prearranged ride."

[2] La. R.S. 45:201.4(4) defines "prearranged ride" as the provision of transportation by a driver to a rider that commences when a driver accepts a ride requested by a person through a digital network controlled by a transportation network company, continues during the driver transporting a requesting rider, and ends when the last requesting rider departs from the personal vehicle."

vehicle struck the Uber driver's vehicle in a hit-and-run accident leaving him with personal injuries. *Id.*

At the time of the Accident, UFCC issued an automobile insurance policy issued to Rasier, LLC providing liability limits of $1,000,000.00 CSL and but no UM coverage ("the UFCC policy"). R. Doc. 12-1 at p. 3. Rasier executed an Uninsured/Underinsured Motorist Bodily Injury Coverage Form signed by Amy E. Wagner, employed at the time as Head of North American Insurance for Uber ("the UFCC rejection form"). *See* R. Doc. 15-4. Wagner's initials appear next to the box which states "I do not want UMBI Coverage. I understand that I will not be compensated [for] UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist." R. Doc. 15-4 at p. 11. Plaintiff does not dispute that the UFCC rejection form exists and purportedly rejects UM coverage. R. Doc. 12-1 at p. 2.

Also at issue is a commercial general liability insurance policy, No. HISOG61P, issued to SWS from Defendant Lloyd's ("the Lloyd's policy"). R. Doc. 44-4. The policy lists SWS, not Plaintiff, as the "Named Insured." R. Doc. 44-4 at p. 1. The LLC's members are later included as "'insureds', but only with respect to the conduct of [the] business." *Id.* at p. 18. There is no language in the Lloyd's policy expressly providing for UM coverage. *See generally id.* Further, the Lloyd's policy contained an auto liability exclusion exempting coverage to "autos," except for when "bodily injury…relates solely and exclusively to the conduct of the 'insured's' business and if only carried out by an 'insured.'" *Id.* at p. 13.

Lloyd's also provided a form attached to the Lloyd's policy which states in part:

"**APPLICABLE ONLY IN LOUISIANA:**

3

I ACKNOWLEDGE THAT UM COVERAGE HAS BEEN EXPLAINED TO ME, AND I HAVE BEEN OFFERED THE OPTION OF SELECTING UM LIMITS EQUAL TO MY LIABILITY LIMITS, UM LIMITS LOWER THAN MY LIABILITY LIMITS, OR TO REJECT UM COVERAGE ENTIRELY….2. I REJECT UM COVERAGE IN ITS ENTIRETY. [SG]"

("the Lloyd's waiver"). R. Doc. 44-6. This waiver has Plaintiff's initials next to the box rejecting UM coverage and is signed and dated October 11, 2022. *Id.* However, the Lloyd's waiver does not use the current UM rejection form, Bulletin 08-02, that the Louisiana Commissioner of Insurance allegedly requires. *See* R. Doc. 44-1 at pp. 9-10.

## LAW AND ANALYSIS

1. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleases factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Fed. R. Civ. P. 8(a), a "short and plain statement of the claim" is required. *Id.* When evaluating a 12(b)(6) motion, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). However,

a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Summary judgment on the other hand is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.

After the movant meets his burden, the burden shifts to the non-movant to show the existence of a genuine issue for trial. *Gernain v. U.S. Bank Nat' Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019). In doing so, the non-movant must submit "significant probative evidence" in support of his claim. *State Farm Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). However, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

5

conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Interpretation of insurance contracts are questions of law. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 878 (5th Cir. 2009). "When the language of an insurance policy is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given." *S. Fid. Ins. Co. v. Gomez*, 2022 WL 3285014, at *3 (E.D. La. Aug. 11, 2022) (citing *Robinson v. Heart*, 809 So.2d 943, 945 (La. 2022)).

2. **<u>Defendants Properly Rejected UM Coverage Under the UFCC Policy.</u>**

The first set of motions ask whether La. R.S. 45:201.6 requires TNCs to provide UM coverage. Plaintiff first moved for summary judgment on June 27, 2024, arguing that La. R.S. 45:201.6 creates an independent mandate for TNCs to provide UM coverage. R. Doc. 12. Because this independent mandate is allegedly separate from La. R.S. 22:1295, Plaintiff maintains TNCs cannot waive or reject UM coverage. *See* R. Doc. 12-1 at pp. 8-13. Uber and Rasier oppose and argue in their motion to dismiss that La. R.S. 45:201.6's plain language that TNCs "include [UM] coverage *to the extent required by La. R.S. 22:1295*" allows TNCs to reject UM coverage under La. R.S. 22:1295(1)(a)(ii) as any other insured. R. Doc. 13 (emphasis added). UFCC moves for summary judgment on the same grounds—that Rasier's rejection of UM coverage in the UFCC rejection form was valid and enforceable. R. Doc. 15. Nearly five months after the motions were submitted, Plaintiff requested the Court certify this question to the Louisiana Supreme Court. R. Doc. 53.

UM coverage is governed by La. R.S. 22:1295 in addition to the terms of the insurance contract. Generally, insurance contracts in Louisiana require UM coverage equal to the limits of bodily injury liability coverage under the policy. La. R.S. 22:1295(1)(a)(i). However, the UM coverage required by statute "is *not* applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided" by La. R.S. 22:1295(1)(a)(ii). (emphasis added). The rejection form must be provided by the insurer and signed by the named insured, or his legal representative. La. R.S. 22:1295(1)(a)(ii). "A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." *Id.*

The Louisiana Supreme Court has six elements for a valid waiver or rejection of UM coverage: (1) initialing the selection or rejection of chosen coverage; (2) if lower limits are selected, those lower limits are reflected; (3) the printed name of the insured or legal representative; (4) signature of the insured or legal representative; (5) the policy number; and (6) the effective date of rejection. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 (La. 11/29/06), 950 So.2d 544, 547. Following a revision of the standard UM form and Bulletin 08-02 set forth by the insurance commissioner in 2010, inclusion of the policy number on a UM waiver form is optional, but inclusion of the insurer's name is now mandatory. *Dotson v. Price*, 399 F.Supp. 3d 617, 622 (E.D. La. 2019); *Berkley Assurance Co. v. Willis*, 2020-0354 (La. App. 4 Cir. 9/29/21), 328 So.3d 567, 575-76. Louisiana law requires a UM rejection be clear and unmistakable. *Daigle v. Authement*, 92-1662, p. 3 (La. 4/8/97), 691 So.2d 1213, 1213.

La. R.S. 45:201.6(b)(2) requires TNCs to "include [UM] coverage to the extent required by La. R.S. 22:1295." La. R.S. 22:1295(1)(a)(i) exempts insurers from UM coverage "when any insured named in the policy either *rejects coverage*, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section." (emphasis added). In other words, an insured can waive UM coverage so long as the waiver complies with La. R.S. 22:1295(1)(a)(ii). As is now well settled, "to the extend required by La. R.S. 22:1295" in La. R.S. 45:201.6 means TNCs can likewise waive or reject UM coverage. *Jean v. James River Ins. Co.*, 2019-0041 (La. App. 4 Cir. 5/29/19), 274 So.3d 43, 46, *writ denied*, 2019-01000 (La. 10/1/19), 280 So.3d 160. This conclusion has been recognized by this Court and others. *Washington v. Uber Techs., Inc.*, No. CV 22-2078, 2023 WL 3004662, at *2 (E.D. La. Apr. 19, 2023) (Guidry, J.); *Ward v. Rasier, LLC*, No. CV 23-5503, 2024 WL 4964733, at *4 (E.D. La. Dec. 4, 2024) (Brown, C.J.).

As applied to this matter, the Court finds no reason to upset this settled interpretation of La. R.S. 45:201.6. When a "'law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied a[s] written, and no further interpretation may be made in search of the intent of the legislature.'" *McLane S., Inc. v. Bridges*, 2011-1141, pp. 5-6 (La. 1/24/12), 84 So.3d 479, 483; *Harrah's Bossier City Inv. Co., LLC v. Bridges*, 2009-1916 (La. 5/11/10), 41 So.3d 438, 446-447 (citing La. C.C. art. 9). The language "to the extent required by [] 22:1295" adopts by general reference La. R.S. 22:1295's UM requirements. It ties TNCs' UM responsibilities to the general UM statute. TNCs are only required to provide UM coverage "as required by" or only "in so far as" La. R.S. 22:1295 mandates. La. R.S. 45:201.6 unambiguously

8

incorporates all of La. R.S. 22:1295, not limited sections. Courts have long held that under La. R.S. 22:1295, "UM coverage is not required when a named insured rejects such coverage in writing or selects lower limits." *Courtney v. Sovereign Fire & Cas. Ins. Co.*, 33,196 (La. App. 2 Cir. 6/21/00), 764 So. 2d 239,240, *writ denied*, 2000-2179 (La. 10/13/00), 771 So. 2d 651. Thus, the reference to La. R.S. 22:1295 as the UM coverage standard for TNCs is not absurd given La. R.S. 22:1295 is the general UM statute.

As Plaintiff admits, in Louisiana, "all laws pertaining to the same subject matter must be interpreted in *pari materia*, or in reference to each other." *Pierce Foundations, Inc. v. Jaroy Construction, Inc.*, 15-785, p. 7 (La. 5/3/16), 190 So.3d 298, 303. Reading the TNC UM requirements in *pari materia* to the general UM statute—which allows an insured to waive or reject UM coverage—is thus consistent with Louisiana statutory interpretation principals. Plaintiff's alternative readings rather obfuscate the plain meaning. *Jean*, 274 So.3d at 46. Additionally, Plaintiff's reliance on the UM New Orleans City Ordinance is inapposite because it was preempted by La. R.S. 45:201.6. *Willie v. Nguyen*, 2023-01253 (La. 11/21/23), 373 So. 3d 440; R. Doc. 19-11 *see also New Orleans Campaign For a Living Wage v. City of New Orleans*, 2002-0991 (La. 9/4/02), 825 So. 2d 1098, 1101 (Louisiana state law prevails over a New Orleans city ordinance). As such, there is no independent UM mandate in La. R.S. 45:201.6 because the plain language, "include [UM] coverage to the extent required by La. R.S. 22:1295," ties the TNC UM requirements to La. R.S. 22:1295, which in turn encompasses the ability to waive or reject such coverage.

9

Thus, the remaining question is whether Defendants properly waived UM coverage for the UFCC policy. Defendants UFCC, Rasier, and Uber assert there is no coverage because Rasier's representative executed a valid and enforceable UM waiver. R. Docs. 13, 15. Defendant Rasier, Uber, and UFCC present the UFCC rejection waiver executed by Wagner on March 1, 2022, on behalf of Rasier. R. Doc. 15-4 at p. 10. Wagner initialed the section reading "I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist." R. Doc. 15-4 at p. 11. Wagner's name is printed on the form, and she signed and dated the form. *Id*. The name of the insurer, UFCC, is printed on the form, along with the policy number. *Id*. Therefore, the form meets the requirements of Louisiana law and is a valid and unambiguous rejection of UM coverage.

UFCC also presents an uncontested affidavit of Wagner. R. Doc. 15-5. Wagner attests that she was employed as Head of North America Insurance for Uber on March 1, 2022. *Id.* at pp. 1-3. Recall Uber is Rasier's parent company. R. Doc. 15-1 at p. 2. Wagner also states that she was responsible for overseeing and supervising insurance decisions on behalf of Uber and its subsidiaries. R. Doc. 15-5 at p. 1. She maintains that she was authorized to reject UM coverage on behalf of Rasier and did reject UM coverage in the UFCC policy. *Id.* at pp. 2-3.

An executed and valid waiver form creates a rebuttable presumption that the insured knowingly rejected uninsured motorist coverage. *Terrell v. Fontenot*, 2011-1472, p. 4 (La. App. 4 Cir. 6/27/12), 96 So. 3d 658, 661. The burden then shifts to the insured to show that the form was not properly completed. *Rapalo-Alfaro v. Lee*, 2015-0209 (La. App. 4 Cir. 8/12/15), 173 So. 3d 1174, 1180. Plaintiff does not challenge or suggest that the UFCC rejection form was not properly

10

completed. *See* R. Docs. 12, 14, 18. With a lawful and valid UM rejection waiver, UFCC, Rasier, and Uber have no UM obligations to Plaintiff.[3]

### 3. **Plaintiff Is Not an "Insured" Under the Lloyd's Policy at The Time of the Accident.**

The second set of motions focuses on whether Plaintiff is entitled to collect UM coverage from the Lloyd's policy issued to SWS. R. Docs. 44, 62. Even though Plaintiff initialed the box that rejected UM coverage, Plaintiff argues that the UM rejection is invalid because, (1) the rejection form is different than the one required under La. R.S. 22:1295(1)(a)(ii), (2) UM coverage follows Plaintiff himself not his vehicle, and (3) Plaintiff is an "insured" under the Lloyd's policy because he is "always conducting the business of the LLC." R. Doc. 44-1 at pp. 10-14. As such Plaintiff moves to collect UM coverage from the Lloyd's policy. *Id.*

Lloyd's opposes and submits a cross-motion for summary judgment. R. Doc. 62. First, they argue Plaintiff is not an "insured" under the policy during the time of the accident because he did not do any work in performance of the LLC, as he suffered his injuries during a purely personal outing, after having lunch and watching a Mardi Gras parade. R. Doc. 62-1 at pp. 3-6. Even if Plaintiff was an "insured," Lloyd's contends Plaintiff is still not entitled to UM coverage because the policy provides no express UM coverage, and Louisiana Law does not require statutory UM coverage in this case. *Id.* at 6-9. Lloyd's also maintains that it is entitled to dismissal with prejudice

---

[3] The Court will also deny Plaintiff's request to certify the issue to the Louisiana Supreme Court because the Supreme Court has denied review twice. *Jean v. James River Ins. Co.*, 2019-0041 (La. App. 4 Cir. 5/29/19), 274 So. 3d 43, 46, writ denied, 2019-01000 (La. 10/1/19), 280 So. 3d 160; *Willie. v. Nguyen,* 2023-01253 (La. App. 4. Cir. 8/17/23), 373 So. 3d 440, 441, writ denied, (La. 11/21/23).

because SWS chose to decline UM coverage and the Lloyd's policy has no liability coverage. *Id.* at pp. 13-14.

There are two ways to collect UM coverage in Louisiana. First, express UM coverage applies when the policy's terms provide for UM coverage. *See, e.g.*, *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So. 2d 191, 195 If express coverage is absent, statutory UM coverage applies when UM coverage is attached to the policy by operation of Louisiana law. *See, e.g.*, *Bernard v. Ellis*, 2011-2377 (La. 7/2/12), 111 So. 3d 995, 1000. The Louisiana Supreme Court holds that if a plaintiff is an insured under the auto liability coverage, he is entitled to UM coverage. *Filipski v. Imperial Fire & Casualty Ins. Co.*, 09–1013 (La.12/1/09), 25 So.3d 742, 745 (per curiam); *see also Magnon*, 739 So.2d at 196. Inversely, only "insureds" under an auto policy insurance are entitled to UM coverage. *See, e.g.*, *Taylor v. Rowell*, 98–2865, at 6 (La.5/18/99), 736 So.2d 812. Here, UM coverage first turns on whether Plaintiff is an "insured" under the Lloyd's policy. *See Filipski*, 25 So.3d at 745.

The Lloyd's policy defines "insureds" as the LLC's, SWS, "members…but only with respect to the conduct of [the] business." R. Doc. 44-4 at p. 18. The parties do not dispute that Plaintiff is a member of SWS. The only question is whether Plaintiff's Mardi Gras lunch-day qualifies as activities "only with respect to the conduct of [the] business." *Id.* It does not. Plaintiff performed no work on the day of the Accident. *See* R. Doc. 69. Plaintiff rather admits that the Accident occurred when he was returning to a friend's, McKay, house after having a social lunch and watching a Mardi Gras parade. R. Doc. 60-3 at pp. 3-12. He also received no calls from SWS customers. *Id.* at p. 13. Instead, Plaintiff alleges at the time of the accident he was under contract

12

for consulting services and was on-call 24/7 to provide those services. R. Doc. 69-1 at p. 3. Nevertheless, he does not put forward any facts that suggest he performed any work for the client or any client on the day of the Accident. *See generally* R. Docs. 44, 69. Most importantly, he concedes that his lunch with McKay, as well as all other activities near or during the Accident, were not in any way related to his business. *See* R. Doc. 60-3 at pp. 8-9. In sum, Plaintiff failed to show he performed any activities "with respect to the conduct of [the] business" at the time of the accident.

       Plaintiff attempts to work around these facts by suggesting that because he is "on call" "24/7" for SWS, he is always performing "conduct for [his] business." R. Doc. 60 at pp. 4-6. This on-call theory strips away any operative meaning or limitation to the words "*but only* with respect to the conduct of [the] business." Under Plaintiff's theory, he always performs activities with "respect to the conduct of [his] business." Insurance contracts are not interpreted to render provisions meaningless. Rather, they "are interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050; *Dean v. State Farm Mut. Auto. Ins. Co.*, 2007-0645 (La. App. 4 Cir. 1/16/08), 975 So. 2d 126, 132. The Lloyd's policy sought to limit coverage to Plaintiff's select business acts as other provisions narrowed coverage to the "sole[] and exclusive[]…conduct of the 'insured's' business and only if carried out by an 'insured.'" R. Doc. 44-4 at p. 13. The limitation that Plaintiff must have at least "engaged in *any* business activities during [an] [a]ccident" to qualify as an "insured" is also consistent with other courts' interpretation of similar insured provisions. *See, e.g.*, *Amoroso v. State Farm Mut. Auto. Ins. Co.*, No. CV 18-1106-EWD, 2021 WL 1176184, at *20 (M.D. La. Mar. 26, 2021). There is

13

no genuine dispute of material fact that Plaintiff performed or engaged in *any* business activities. Thus, at the time of the accident, Plaintiff was not an "insured" under the Lloyd's policy. Accordingly,

**IT IS ORDERED** that Rasier and Uber's Motion to Dismiss, R. Doc. 13, and UFCC's Motion for Summary Judgment, R. Doc. 15, are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, R. Doc. 12, is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Certify to the Louisiana Supreme Court, R. Doc. 53, is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Lloyd's Cross-Motion for Summary Judgment, R. Doc. 62, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, R. Doc. 44, is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are DISMISSED WITH PREJUDICE. Judgment will be entered for Defendants.

New Orleans, Louisiana, this 18th day of February 2025.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE